UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

VERNA JEAN COOPER,

    Plaintiff,

v.                                                           CASE NO. 3:15-cv-864-J-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a period of disability and Disability Insurance Benefits. Plaintiff alleges she became disabled on November 30, 2011. (Tr. 22.) Plaintiff's claims were denied initially and on reconsideration. (Tr. 130-34, 142-46.) A hearing was held before the assigned Administrative Law Judge ("ALJ") on January 10, 2014, at which Plaintiff was represented by an attorney. (Tr. 42-94.) The ALJ found Plaintiff not disabled from November 30, 2011, the alleged onset date, through March 15, 2014, the date of the decision. (Tr. 22-33.)

Plaintiff is appealing the Commissioner's decision that she was not disabled from November 30, 2011 through March 15, 2014. Plaintiff has exhausted her available administrative remedies and the case is properly before

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 25, 27.)

the Court. The undersigned has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **REVERSED AND REMANDED.**

**I.      Standard of Review**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

**II.    Discussion**

Plaintiff raises two general issues on appeal.  Plaintiff argues that the ALJ erred in failing to develop the record despite evidentiary gaps and missing records from Plaintiff's primary care physician, Judella Haddad, M.D., and Plaintiff's treating providers for her mental health impairments, Drs. Lockey and Latteny.  Plaintiff also contends that the Appeals Council failed to properly analyze the new evidence submitted by her.  Specifically, Plaintiff submitted a clinic note dated January 5, 2015 (the "Clinic Note"), interpreting an April 4, 2014 echocardiogram and opining that Plaintiff is a New York Heart Association class III, denoting severe limitations.  (Tr. 13-17.)  Plaintiff also attempted to fax medical records from Drs. Haddad and Latteny to the Appeals Council, but they never made it into the record.  (Tr. 12.)

Defendant contends that Plaintiff failed to meet her burden of proving disability and that the ALJ did not err in failing to develop the record.  Defendant also argues that the Appeals Council did not err in reviewing the new evidence because the Clinic Note was not chronologically relevant, as the Appeals Council determined, and because the alleged missing records were never faxed to the Appeals Council.

**A.    The ALJ's Decision and Appeals Council Review**

The ALJ found that Plaintiff had severe impairments, including congestive heart failure, Chronic Obstructive Pulmonary Disease, osteoarthritis,

3

hypertension, obesity, diabetes mellitus, and Gastroesophageal Reflux Disease. (Tr. 24.) However, the ALJ found that Plaintiff had non-severe impairments, including small singer's vocal cord nodule, Reinkes edema, 20/40 vision, affective disorder, and anxiety related disorders. (*Id.*) The ALJ discussed a May 2012 Psychological Evaluation Report from Allison Keiter, Psy.D. in assessing Plaintiff's mental impairments as non-severe. (Tr. 24-25, 524-28.) In the report, Dr. Keiter opined, *inter alia*, that Plaintiff can follow and understand simple directions and instructions, and is able to maintain concentration and attention, but may have occasional difficulties maintaining a regular schedule. (Tr. 25, 527.) In concluding that Plaintiff's mental impairments were non-severe, the ALJ afforded Dr. Keiter's opinions "no significant weight," explaining that the "examination records and the longitudinal treatment records do not corroborate the conclusion of occasional difficulties maintaining a regular schedule," and because Plaintiff "routinely denied experiencing any mental health symptoms," subsequent to the examination. (Tr. 25.) The ALJ determined that "claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526)." (Tr. 27.)

The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with limitations. (*Id.*) As part of this determination, the ALJ discounted Plaintiff's credibility, noting that she received only minimal

4

treatment for her alleged disabling impairments. (Tr. 31.) The ALJ afforded weight to one record medical opinion – the opinion of non-examining state agency medical consultant, David Guttman, M.D. (*Id.*) The ALJ afforded Dr. Guttman's opinions regarding Plaintiff's suggested limitations "great weight," explaining that the opinions are well supported by the record. (*Id.*)

Continuing on with the evaluation, the ALJ determined that Plaintiff could perform her past relevant work as a sales agent, underwriter, and receptionist. (Tr. 32.) The ALJ ultimately concluded that Plaintiff was not disabled. (*Id.*)

At the hearing before the ALJ, Plaintiff informed the ALJ that her file did not include recent treatment records from the doctors who treated her subsequent to her onset date, but prior to the ALJ's decision. (Tr. 63-68.) Plaintiff explained that she would have obtained the records prior to the hearing and brought them to the hearing if she was aware that her attorney did not have the records. (Tr. 68.)

Plaintiff's attorney apparently did not undertake to represent Plaintiff on Appeal, and Plaintiff herself timely requested review of the decision on May 15, 2014 (Tr. 18.) Although the record is limited in this regard, it does appear that Plaintiff's attorney notified the agency on March 3, 2015 that certain records (presumably not in the record) were available. (Tr. 5 (addressing letter to Plaintiff's attorney and stating that "[i]n the request for review, you told us that evidence is available from Shan[d]s.").) Nevertheless, Plaintiff, on her own,

attempted to fax multiple records to the Appeals Council. (Tr. 12-17.) The records include a handwritten cover sheet submitted by Plaintiff, indicating that 19 pages were faxed to the Appeals Council. Plaintiff listed on the cover sheet undated records from Drs. Haddad and Latteny, which apparently were never received by the agency, as well as the Clinic Note, which was received by the Appeals Council. On May 11, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. 1-4.) In the denial letter, the Appeals Council notified Plaintiff that it received the Clinic Note dated January 5, 2016, but found it not to be chronologically relevant.[2] (Tr. 2.)

**B.   Analysis**

Plaintiff argues that the ALJ erred in failing to adequately develop the record regarding the missing records. Defendant responds that Plaintiff has the burden of proving disability by submitting her own records and she failed to meet such burden. Defendant also points out that the ALJ has only a basic duty to develop the record where, as here, the claimant is represented by counsel.

The claimant bears the burden of proving that he or she is disabled and is responsible for producing evidence to support his or her claim for disability. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Nevertheless, because

---

[2] The Appeals Council made no mention of the records from Drs. Haddad and Latteny, as indicated on the cover sheet, (Tr. 1-4) and the Commissioner advised that the only records that could be located were those contained in the current certified record. (Doc. 40 at 17, n.17.)

social security proceedings are inquisitorial, not adversarial, the ALJ has a basic obligation to develop a full and fair record. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). This obligation requires the ALJ to "investigate facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000). Further, this basic duty applies regardless of whether the claimant is represented by counsel. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). In determining whether it is necessary to remand a case for development of the record, "the Court must balance an ALJ's duty to develop a full and fair record against a claimant's responsibility to prove disability." *Elliott v. Colvin*, No. 12-00682-N, 2013 WL 5289101, at *4 (S.D. Ala. Sept. 18, 2013). In doing so, the Court considers "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Id.* at 935 (quotation marks and citations omitted).

    The circumstances presented in this case tip the balance in favor of remand. Although Defendant correctly notes that it is Plaintiff's burden to prove that she is disabled, Plaintiff informed the ALJ multiple times during the course of her hearing that relevant medical records existed, but the ALJ failed to sufficiently probe the facts regarding the missing records so as to satisfy the duty to present a full record. For example, with respect to Plaintiff's mental impairments, the ALJ inquired as to whether they interfere with Plaintiff's ability to work, to which

7

Plaintiff responded in the affirmative, due to her anxiety. (Tr. 61-63.) The ALJ inquired into whether Plaintiff was currently being treated for anxiety, to which Plaintiff responded that she was currently being treated for anxiety by her primary care physician, Dr. Haddad, as well as being referred to and treated in 2013 by psychiatrist, Dr. Lockey, and another mental health professional, Dr. Latteny. (Tr. 63.) Plaintiff even testified that she had been treated the month prior to the hearing and that her therapist told her she had post traumatic stress disorder. (Tr. 64, 75.) Despite this testimony, the ALJ did not inquire further to obtain relevant information regarding the doctors, such as the doctors' background,[3] treatment regimen, or opinions with respect to impairments. (Tr. 63-65.) Additionally, Plaintiff's attorney informed the ALJ that Plaintiff requested her office to obtain medical records from at least one provider in the weeks leading up to the hearing. (Tr. 75 ("Q. Okay. And you had talked to our office a couple of weeks ago and gave us a fax number to get [Dr. Latteny's] records, correct? A. Mm-hmm.").) However, the ALJ did not inquire as to whether those records were ever requested or received on Plaintiff's behalf, and did not inquire as to whether Plaintiff desired to hold the record open to obtain such documents. *See, e.g., Boone v. Barnhart*, 353 F.3d 203, 208 n.11 (3d Cir. 2003) (noting that the ALJ

---

[3] Notably, Plaintiff stated that she had Dr. Lockey's business card in her purse, but the ALJ did not ask her to confirm his full name or to provide any information with respect to his practice. (Tr. 63 ("Q Well, who's your psychiatrist? Dr. Neil Lockey [phonetic], or something like that. I have his card in my purse. Q. When did you last see Dr. Lockey?").)

has a duty to follow up on counsel's inquiry to a witness during a DIB hearing in order to ensure a complete record) (citations omitted).

The ALJ's failure to sufficiently probe the facts regarding the missing mental health records is prejudicial in light of the evidentiary gaps presented in the record. Namely, in finding Plaintiff's mental impairments non-severe, the ALJ discounted the opinions of Dr. Keiter (who prepared the only examining mental impairment report during the alleged disability period), citing Plaintiff's subsequent denial of psychiatric symptoms and Dr. Haddad's lack of reference to psychiatric symptoms as reasons for doing so. (Tr. 25.) Medical records from Dr. Haddad and other treating mental health providers indicating treatment for anxiety may shed light on the severity of Plaintiff's mental impairments in a way that the records before the ALJ cannot. *See, e.g., Brown*, 44 F.3d at 935 ("The lack of medical and vocational documentation supporting an applicant's allegations of disability is undoubtedly prejudicial to a claim for benefits. We have no way of knowing whether the evidence missing from the case would sustain [claimant's] contentions of her inability to work.");[4] *see also Rothfeldt v. Acting Comm'r of Soc. Sec.*, No. 15-15005, 2016 WL 60680619, at *3 (11th Cir. Oct. 18, 2016) ("[Evidentiary] gaps exist when omitted medical records are relevant to the

---

[4] Although the undersigned recognizes the distinction that the claimant in *Brown* was not represented by an attorney, the Eleventh Circuit in *Brown* recognized the ALJ's duty to develop a full and fair record exists "[w]hether or not the applicant is represented [by counsel]." *Brown*, 44 F.3d at 934.

applicant's claim of disability and the missing evidence might sustain the contention of an inability to work.") (citations omitted); *Parker v. Colvin*, No. 3:13-cv-1398(CSH), 2015 WL 928299, at *13 (D. Conn. Mar. 4, 2015) ("The ALJ had a duty to review the records of plaintiff's providers for her mental health impairment, namely, the records from the Morris Foundation, before reaching a conclusion regarding plaintiff's mental impairments, particularly when the ALJ reached his conclusion as to plaintiff's 'mild' limitations in light of a lack of treatment records.").

With respect to her physical impairments, Plaintiff testified that Dr. Haddad opined that certain limitations preclude her from performing work. Specifically, Plaintiff testified that Dr. Haddad opined that she was limited with respect to walking and that she could not lift more than five pounds. (Tr. 68-70.) Plaintiff further testified that her doctors have required her to take breathing treatments at least three to four times per day. (Tr. 69-70.) Plaintiff informed the ALJ that she did not know that her file did not include the most recent records from her treating doctors, or else she would have obtained them herself. (Tr. 67-68 ("Q. If you could try to remember [when Dr. Haddad] most recently [asked you to consider filing for disability], that seems like it would be the kind of thing you might remember. A. Yeah, it should be, but just like my medical records from my ENT is not. They should have been here. My medical records from Dr. Latteny should have been here, but they're not here . . . If I would have known I would have

brought all that with me. . . Q. Okay. Why – you didn't know that that's what we were going to talk about today? A. I didn't know that my attorney did not have [the records].").) Although Plaintiff had trouble recalling the exact dates of the recent treatment records from Dr. Haddad, she did reference 2012 as the date when she thought Dr. Haddad prescribed lifting limitations. (*See* Tr. 67 ("Q. I'm looking for a month and a year, when did she most recently [ask you to consider filing for disability]. A. "I didn't know I needed all that information, if I did I would have written it down."), 70 ("Q. And did [Dr. Haddad] give you a specific weight instruction, or did she just tell you not to lift anything? A. Not to lift anything over five pounds. Q. Okay. Do you remember when she told you that? A. It had to be maybe 2012.").)

Despite being informed of missing records and limitations prescribed by treating doctors, the ALJ did nothing further to probe or investigate the facts with respect to this issue, other than to question Plaintiff's attorney on the record as presented. (Tr. 66-71.) Notably, upon learning this information, the ALJ neither confirmed with Plaintiff's attorney that the record was complete, nor inquired whether the record should be kept open to attempt to obtain any missing records. *Cf. Larry v. Comm'r of Soc. Sec.*, 506 F. App'x 967, 969 (11th Cir. 2013) ("The ALJ then specifically asked [the plaintiff's attorney] if he had any additional exhibits, and his attorney replied that the record was complete. Thus, any alleged error the ALJ may have made in not obtaining more recent medical

11

records was invited.") (citations omitted); *Rease v. Barnhart*, 422 F. Supp. 2d 1334, 1343 (N.D. Ga. 2006) ("[H]earings before the Commissioner [] are non-adversarial in nature, and oblige the adjudicator (A[ppeals] C[ouncil] and ALJ) to ensure that the hearing record is complete."); *Ford v. Astrue*, No. 3:09-cv-688-J-JBT, 2011 WL 611661, at *3 (M.D. Fla. Feb. 11, 2011) ("One way to develop a full and fair record is by 'keeping the record open after the hearing to allow supplementation of the record.'") (quoting *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)).

The ALJ's error in failing to ensure a complete record in this regard was similarly prejudicial in light of the evidentiary gaps presented in the record. Although multiple treatment records from Dr. Haddad exist in the record, the last treatment note from her appears to be from May 2012. The ALJ found Plaintiff not disabled "through the date of th[e] decision [in this case]," rendered in March 2014 (nearly two years later). (Tr. 32.) Further, despite over 200 pages of medical records spanning the period between 2008 and 2014, the record contains no physical RFC assessments by any treating or examining physician. *Cf. Hoehn v. Colvin*, No. 14-CV-6401L, 2016 WL 241365, at *3 (W.D.N.Y. Jan. 21, 2016) (finding that the ALJ failed to fully develop the record where although the record included approximately 300 pages of medical treatment notes from 2008 through 2012, the ALJ did not request any RFC assessments from the plaintiff's treating physicians or direct the plaintiff obtain one). Rather, the ALJ

12

relied on the opinions of the non-examining state agency consultant, affording him "great weight." (Tr. 31.) It is important to note that in analyzing the medical evidence as a whole, the ALJ found no support for Plaintiff's alleged disabling symptoms and limitations because Plaintiff received "only minimal treatment for the allegedly disabling impairments," that was routine and conservative in nature (Tr. 31).

While the Commissioner argues that the Court cannot rely on Plaintiff's subjective beliefs with respect to missing records to show error, the holding in *Brown* belies such argument. 44 F.3d at 935-36 ("The lack of medical and vocational documentation supporting an applicant's allegations of disability is undoubtedly prejudicial to a claim for benefits. We have no way of knowing whether the evidence missing from this case would sustain [the claimant's] contentions of her inability to work. In the absence of proof to the contrary, however, *we must assume that it does lend credence to her allegations*.") (emphasis added). Nevertheless, radiology reports in the record from Shands Jacksonville in August 2013 reveal Dr. Haddad as Plaintiff's attending physician. (Tr. 556.) It also appears that Plaintiff attempted to fax at least some of the missing records to the Appeals Council.[5] *Cf. Rivera v. Comm'r of Soc. Sec.*, No.

---

[5] The undersigned recognizes that the records from Drs. Haddad and Latteny listed on the fax cover sheet are undated. However, the undersigned finds it reasonable to believe that the records attempted to be faxed by Plaintiff were those not included in the record in light of Plaintiff's testimony, as well as the fact that no records exist from Dr. Latteny.

6:12-cv-232-Orl-GJK, 2013 WL 557214, at *8 (M.D. Fla. Feb. 14, 2013) ("Because the ALJ only had a basic duty to develop the record, Claimant bears the ultimate burden of presenting evidence to support her allegations of disability. Although the ALJ in this case did not direct Claimant to produce the missing medical records, Claimant also did not request the ALJ grant her additional time to provide them. *Nor has Claimant attempted to provide the missing records to the Appeals Council or otherwise attempted to supplement the record.*") (emphasis added) (internal citations omitted); *Ford*, 2011 WL 611661 at *4 & n.3 (holding that the ALJ failed to develop the record where the ALJ did not consider recent medical records that were omitted from the record but submitted to the Appeals Council). Similarly, it appears Plaintiff's attorney notified the agency that certain records were available. (Tr. 5 (addressing letter to Plaintiff's attorney and stating that "[i]n the request for review, you told us that evidence is available from Shan[d]s.").) Even the Clinic Note faxed by Plaintiff to the Appeals Council makes multiple references to Dr. Haddad prescribing medications in 2014. (Tr. 15-16.)

     Upon review, the Court cannot conclude that the ALJ developed a full and fair record. As noted by the Eleventh Circuit in *Brown*, the undersigned is not suggesting that "a remand is warranted any time a claimant alleges that the ALJ has neglected to complete the record." 44 F.3d at 936 n.9. However, based on the circumstances presented in this case and reviewing the record as a whole,

the undersigned concludes that remand is warranted here. In light of this conclusion, the Court finds it unnecessary to consider Plaintiff's other argument that the Appeals Council erred in considering the Clinic Note. *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986). However, the Commissioner will be directed to reconsider all evidence, including the new evidence made part of the record, in rendering a decision. *See, e.g., Alexander v. Comm'r of Soc. Sec.*, Case No.: 8:13-cv-1602-T-GJK, 2014 WL 4211311 at *3 n.3 (M.D. Fla. Aug. 26, 2014) (citing *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (stating that on remand the ALJ must reassess the entire record)).

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** with instructions to the Commissioner to: (a) develop a full and fair record with respect to the alleged missing records as discussed herein and (b) conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment consistent with this Order and close the file.

3. Plaintiff's counsel is advised that, in the event benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in Case No.: 6:12-124-Orl-22 (*In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) &*

*1383(d)(2))*. This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on March 27, 2017.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record